IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TAWNYA FIELDSTED,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of the*<br>*Social Security Administration,*<br><br>        Defendant. | MEMORANDUM DECISION<br><br>Case No. 2:12-cv-00708-DBP<br><br>Magistrate Judge Dustin B. Pead |

## I.        INTRODUCTION

This matter is before the Court under 28 U.S.C. § 636(c).  (Docket No. 17.)  Plaintiff appeals the Social Security Commissioner's decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  (Dkt. No. 3.)  After considering the parties' briefs, the administrative record, and the relevant law, the Court **REVERSES** and **REMANDS** this matter for further proceedings.

## II.        PROCEDURAL HISTORY

On September 29, 2009 Plaintiff protectively filed a Title II DIB and Title XVI SSI application.  (Tr. 163-70.)  She alleged March 1, 2008 as her amended disability onset date.  (*Id.* 54.)  On February 4, 2010, her application was initially denied.  (*Id.* 105-08.)  On April 15, 2010, it was denied upon reconsideration.  (*Id.* 115-20.)  On June 16, 2011, Plaintiff received an administrative hearing before an administrative law judge ("ALJ").  (*Id.* 131-36.)  On June 20, 2011, the ALJ issued a partially favorable decision finding Plaintiff disabled as of October 20,

2009.  (Tr. 20-30.)  However, the ALJ declined to find Plaintiff disabled from March 1, 2008 to October 19, 2009 ("the relevant time period").  (*Id.*)  On February 2, 2012, the Appeals Council denied Plaintiff's request for review (*id.* 4-6), making the ALJ's decision the Commissioner's final decision for appeal purposes.  *See* 20 C.F.R. § 422.210(a).

## III.   FACTUAL HISTORY

Plaintiff alleged disability due to arterial venous malformation ("AVM"), speech and eyesight loss, pain, anxiety, seizures, and memory loss.  (Tr. 192.)  Plaintiff underwent brain surgery for her AVM in 1993, and again in 2000.  (*Id.* 268.)  As a result, she experienced residual headaches.  At her administrative hearing, Plaintiff specified she experienced two types of headaches during the relevant time period.  (*Id.* 59.)

Plaintiff testified she suffered a constant headache that caused light sensitivity, and pounding in her head.  (Tr. 60.)  On "a good day" with this headache, she could get dressed, wash dishes, and do laundry.  (*Id.*)  Plaintiff also testified she experienced migraine headaches at least twice a week that caused nausea, vomiting, speech difficulties, and inability to function.  (*Id.* 61-62.)

To treat the aforementioned headaches, Plaintiff took Lortab and Phenergan on a daily basis.  (Tr. 288.)  However, when the nausea from her migraines caused her to throw up her medications, Plaintiff received Demerol and Morphine injections.  (*Id.* 63, 281-82.)  She testified she received "two to four" injections a month.  (*Id.* 63.)

Plaintiff specified it took her two to three days "to get going again" after suffering such migraines.  (Tr. 56.)  Her father corroborated it took her "a couple days to . . . come out of" such migraines.  (*Id.* 96.)  The vocational expert testified that someone who missed work "three or more days a month" for such migraines would be precluded from all work.  (*Id.* 84.)

**IV.     STATEMENT OF RELEVANT LAW**

**A.  Definition of Disability Under the Act**

The Act states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

**B.  Process for Determining Disability Under the Act**

To determine whether a claimant is disabled, social security regulations set forth a five-step sequential evaluation process.  That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged disability period; (2) had a severe impairment; (3) had a severe impairment that met or medically equaled a listed impairment; (4) could return to his past relevant work; and, if not (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4).

**V.      STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings, and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  The Court may neither reweigh the evidence, nor substitute its judgment for the Commissioner's.  *Id.*

## VI.       ALJ DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

March 1, 2008.  (Tr. 22.)  At step two, the ALJ found Plaintiff suffered the following severe

impairment during the relevant time period: (1) history of AVM with residual headaches.  (*Id.*

23.)  At step three, the ALJ found Plaintiff did not have an impairment that met or medically

equaled a listed impairment during the relevant time period.  (*Id.*)  During the relevant time

period, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") "to perform

a full range of work at all exertional levels" with the following nonexertional limitations: (1)

never climbing ladders, ropes, or scaffolds; (2) occasionally climbing ramps and stairs, and

balancing; (3) avoiding concentrated exposure to hazards such as heights and machinery; and (4)

avoiding concentrated exposure to bright lights and noise.  (*Id.* 23-24.)  At step four, the ALJ

concluded Plaintiff could perform past relevant work as a receptionist, administrative clerk, bank

teller, waitress, and flower sales clerk.  (*Id.* 27.)

## VII.      PLAINTIFF'S APPEAL

### A.  Whether ALJ Erred in Assessing Plaintiff's Migraines

On appeal, Plaintiff claims the ALJ erred in assessing the "severity" of Plaintiff's migraines,

and their "impact" on Plaintiff's "ability to perform consistent work."  (Dkt. No. 18 at 7.)  In

assessing Plaintiff's RFC, the ALJ included the following analysis under a heading entitled

"Medical Evidence Related to Functioning":

> Between *March of 2008 and December of 2008*, [Plaintiff] underwent *three
> injections* at her doctor's office for headaches and she had two emergency room
> visits for headaches.  She had a *total of four documented headaches* in the course
> of ten months. . . . From *January through September of 2009* . . . she underwent
> *several injections* for headaches at her doctor's office and she had three additional
> emergency room visits for headaches. . . . During this period, she had an
> *additional four documented headaches* requiring medical treatment . . . .

(Tr. 25) (emphasis added.)  In sum, the ALJ concluded that Plaintiff only suffered eight documented migraines that required intervention during the relevant time period.

In contrast, the medical record shows that Plaintiff suffered at least twenty such migraines, eighteen of which required Demerol and/or Morphine injections.  (*Id.* 282-85, 335, 342-43, 350, 357, 361-62, 364, 424, 598, 693-95, 700-04.)[1]  Indeed, between March 2008 and December 2008, Plaintiff received six injections (*id.* 282-83, 343, 693), rather than the three stated by the ALJ.  Similarly, between January 2009 and September 2009, Plaintiff received twenty injections. (*Id.* 335, 342, 350, 362-64, 424, 598, 693, 695, 700-04.)  Even the Commissioner acknowledges that the ALJ's decision "is imprecise with respect to the actual number of headaches Plaintiff experienced . . . ."  (Dkt. No. 21 at 5.)  Under these circumstances, the Court finds the ALJ erred in assessing the severity of Plaintiff's migraines during the relevant time period.

### B.  Whether ALJ Committed Harmless Error

Harmless error does not require remand.  Harmless error occurs where "based on material the ALJ did at least consider (just not properly), [the reviewing court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The Commissioner urges the Court to find the ALJ committed harmless error because her "ultimate conclusion that the record does not support the frequency of [Plaintiff's] allegedly debilitating episodes requiring hospital or doctor's care is accurate."  (Dkt. No. 21 at 5-6.)  To

---

[1] Plaintiff alleged she received Demerol and Morphine injections on March 25, 2008, and March 29, 2008 (Dkt. No. 18 at 8), but the record only shows prescriptions written for Demerol and Morphine on those dates (Tr. 282, 336).  Plaintiff alleged she received a Demerol injection in February 2009 (Dkt. No. 18 at 9), but the record only notes an emergency room visit for a migraine on that date (Tr. 362).  Plaintiff alleged she received a Demerol injection on July 8, 2009 (Dkt. No. 18 at 9), but the Court could not locate this injection in the record.  On remand, Plaintiff may wish to explain how the record supports injections on these dates.

support this position, the Commissioner claims that the treating physician's notes, the objective medical evidence, and the ALJ's credibility determination fail to support Plaintiff's testimony that she suffered at least two migraines a week. (Dkt. No. 21 at 6-9.)

Even taking into account the Commissioner's aforementioned arguments, this Court cannot confidently say that a reasonable factfinder, who correctly noted Plaintiff's migraines and injections, would have come to the same result. To conclude that Plaintiff retained the RFC to perform a full range of work, and that Plaintiff could perform past relevant work, the ALJ erroneously ignored twelve of Plaintiff's twenty migraines, and the injections such migraines required (Tr. 23-27). (*See* Dkt. No. 18 at 8-10.)

For instance, the ALJ relied on her error to decide Plaintiff's "statements concerning the intensity, duration and limiting effects of [] [her] symptoms are not fully credible and are *somewhat out of proportion to the medical record . . . .*" (Tr. 26) (emphasis added.) The ALJ also relied on her error when she opined that "the treatment notes do not support an increase in [] [Plaintiff's] migraine headaches . . . ." (*Id.*)

Under the aforementioned circumstances, the Court finds the ALJ did not commit a harmless error. *See Allen*, 357 F.3d at 1144-45 (concluding ALJ committed "critical error[]" where the record showed one-hundred available jobs, but the ALJ erroneously found eight-hundred available jobs); *Schaefer v. Astrue*, No. 10-4008-SAC, 2011 WL 484193, at *4 (D. Kan. Feb. 7, 2011) (unpublished) (refusing to find harmless error where ALJ "clearly relied on an incorrect assertion" that claimant had no fibromyalgia trigger points "to discount the severity of" claimant's "fibromyalgia and its impact on [claimant's] ability to work.").

**VIII.        ORDERS**

For the reasons set forth above, the Court **REVERSES** and **REMANDS** this case to the Commissioner.  On remand, the Commissioner should re-evaluate the medical evidence in light of the correct number of migraines and injections Plaintiff experienced during the relevant time period, and the corresponding effects such migraines and injections had on Plaintiff.  The Court expresses no opinion about whether the ALJ's findings at any step of the evaluation process will change.

Dated this 6th day of September, 2013.                By the Court:


Dustin B. Pead
United States Magistrate Judge